**COLORADO PERFORMANCE CORPORATION, a Colorado corporation; Harvey Felten; Marilyn E. Felten; G. William Ives Trust, Assignee of G. William Ives and Carole S. Ives; Donald J. Farabaugh; Valerie Joyce Harris; Duane Edgar Burgen; Joseph T. Hart; Anthony G. Seganti and Gloria A. Seganti, Plaintiffs–Appellants and Cross–Appellees,**

v.

**MARIPOSA ASSOCIATES, a Limited Partnership, Iowa Gulch, Ltd., a corporation, and Robert C. Murphy, and Mountain Land Construction Co., a corporation, Buffalo Park Development Co., a corporation, and Ronald Lewis, Defendants–Appellees and Cross–Appellants.**

No. 84CA0596.

Colorado Court of Appeals,
Div. III.

Nov. 5, 1987.

Rehearing Denied Dec. 17, 1987.

Certiorari Denied May 16, 1988.

402

Raphael M. Solot, Denver, for plaintiffs-appellants and cross-appellees.

Phelps, Hall, Singer & Dunn, Alan Gary Dunn, Richard P. Hall, Denver, for defendants-appellees and cross-appellants, Mariposa Associates, Iowa Gulch, Ltd. and Robert C. Murphy.

Bradley, Campbell & Carney, Victor F. Boog, Jim M. Hansen, Golden, for defendants-appellees and cross-appellants, Mountain Land Const. Co., a Corp., Buffalo Park Development Co. and Ronald Lewis.

CRISWELL, Judge.

After a bench trial in the district court, plaintiffs recovered a money judgment against all defendants, based upon plaintiffs' claims that all defendants were participants in a joint venture that was guilty of breach of contract and fraudulent concealment. Defendants appeal from the judgment, asserting that the evidence fails to support the court's liability conclusions and that the court erred in granting to plaintiffs pre-judgment interest on the damage award. Plaintiffs also appeal, complaining of the method used by the trial court to compute their monetary damages, of its denial of punitive damages, and of the court's equitable decree requiring plaintiffs to convey certain land to one of the defendants. We affirm in part and reverse in part.

Defendant Mariposa Associates (Mariposa) is a limited partnership of which defendant Iowa Gulch, Ltd., is a general partner. Defendant Robert C. Murphy is one of Mariposa's limited partners. Defendants Mountain Land Construction Co. (Mountain Land) and Buffalo Park Development Co. (Buffalo Park) are corporations of which defendant Ronald Lewis (Lewis) was the sole or principal stockholder and chief executive officer.

In August 1969, Mariposa purchased land consisting of approximately 900 acres, located in Jefferson County. In connection with that purchase, it executed a purchase money deed of trust, securing a promissory note in a substantial amount.

In September 1969, Mariposa entered into an agreement with Buffalo Park (the Master Development Contract) that required Buffalo Park to develop a portion of the land into residential building sites by platting and zoning the same, by installing roads and public utilities, and by selling the building sites thus developed. It was to be Mariposa's sole responsibility to make all payments required by the purchase money note and to pay all ad valorem taxes; all expenses relating to the development and sale of the property were to be the sole responsibility of Buffalo Park. Upon the sale of any residential building site, the "gross purchase price" was to be divided equally · between Mariposa and Buffalo Park (without regard to the relative level of expenses each would have individually incurred). The .Master Development Contract provided that it should not be construed as creating any partnership or agency relationship between the parties, or otherwise subjecting Mariposa to any debts or liabilities which Buffalo Park might incur in connection with the project.

Buffalo Park agreed to develop and sell 80 acres of residential sites per year, commencing October 1, 1969. In the event that it defaulted in this obligation, Mariposa was entitled to terminate the Master Development Contract. As of the end of the first year, Buffalo Park had not developed and sold the 80 acres required. Rather than terminating the agreement, however, the parties entered into an amendment to the Master Development Contract in October 1970 that had the effect of excusing Buffalo Park's failure to develop that year in return for an increased consideration to Mariposa.

At some point in 1971, Lewis proposed to Mariposa, and it agreed, that the Master Development Contract be modified again, so as to allow the sale of undeveloped tracts to investors who would, in turn, enter into additional development contracts with one of the companies owned by Lewis. The trial court found, with record support, that this proposal was made by Lewis so as to provide to him and his companies additional cash with which to perform the obligations under the Master Development

Contract. A short memorandum was executed authorizing the sale of a portion of Mariposa's land to other investors and providing that the gross proceeds from the sale of this undeveloped land were to be divided equally between Mariposa and Buffalo Park. By the terms of this memorandum, after the sale of this land to third parties, Mariposa "would not be a party to or financially involved in the redvelopment (sic) phase of the property [thus sold]."

Plaintiffs thereafter purchased small parcels of the land from Mariposa by means of individual installment land contracts (ILCs) and then entered into individual development agreements (IDAs) with Mountain Land (or, in one case, with Buffalo Park). Each ILC generally involved a 5– or 10–acre parcel and provided for the purchase price to be paid in installments over a period of up to 15 years. It contained a provision that the buyer would not "make any major alterations or additions" to the property without Mariposa's consent and also provided for the escrow of a warranty deed to the property and for delivery of the same to the buyer upon the payment of the full purchase price.

The IDAs were executed about the same time the ILCs were signed. Each IDA acknowledged the existence of the pertinent ILC; required Mountain Land or Buffalo Park to develop the property for residential building sites and to sell the same for a minimum price set forth in the agreement; and provided that each plaintiff would be paid from the . sale proceeds an amount equal to the price to be paid under the ILC (less any amounts then owing under that ILC), plus one-half of the difference between the gross sales price of the developed sites and that price. Each agreement also provided that its "term" was to be four years from the date it was signed.

However, none of the land that was the subject of the IDAs was fully developed or sold within four years from the dates of those agreements, nor had any of the land been so developed or sold as of March 1981, when plaintiffs instituted this action against the defendants. This action was

commenced because of the lack of such complete development.

After trial, the court entered a judgment for compensatory damages against all defendants. In its extensive findings of fact and conclusions of law, it determined, generally, that all of the defendants were engaged in a joint venture, making each of them liable for the contract breach or fraud by any of them; that plaintiffs were the third-party beneficiaries of the Master Development Contract, which Buffalo Park had violated by failing to develop 80 acres per year; that Mountain Land and Buffalo Park had violated the provisions of the IDAs by failing to develop and sell the property subject to those agreements within four years; and that plaintiffs had been defrauded because certain material facts, upon which plaintiffs might have relied in contracting either with Mariposa, Mountain Land, or Buffalo Park, were not disclosed to them.

As damages, plaintiffs were awarded the amount which they had agreed to pay under the ILCs (less what they still owed), plus fifty per cent of the difference between that sales price and what the land's fair market value would have been at the end of four years had the land been developed and sold by that time. However, plaintiffs were required, as a condition of this judgment, to convey their interest in the properties to Mariposa.

## I. The Existence of a Joint Venture

The defendants Mariposa, Iowa Gulch, Ltd., and Robert C. Murphy argue that the evidence of record is insufficient to demonstrate the existence of a joint venture between them and the other defendants. We agree.

It should be noted that plaintiffs' claim, and the trial court's finding, was that the relationship among the defendants was, in fact, that of joint venturers. No claim was made, and the court made no finding, that the defendants were estopped from denying the existence of a joint venture, see § 7–60–116, C.R.S. (1986 Repl.Vol. 3A), or that there existed some other basis for asserting an agency relationship among them.

The trial court based its conclusion that a joint venture was created upon the fact that both Mariposa and the Lewis group of defendants were to act jointly in making decisions upon the form which the development project was to take; that the ILCs between Mariposa and plaintiffs were interdependent with the IDAs; that the ILCs prohibited development upon the land sold to plaintiffs without Mariposa's consent; and that the price paid by plaintiffs for the land was to be divided equally between Mariposa and Buffalo Park.

■ A joint venture is a partnership formed for a limited purpose. Hence, the substantive law of partnerships must be applied in determining whether a joint venture exists. *See Hooper v. Yoder*, 737 P.2d 852 n. 4 (Colo.1987).

■ The Uniform Partnership Law, § 7–60–106(1), C.R.S. (1986 Repl.Vol. 3A), defines a partnership as "an association of two or more persons to carry on, as coowners, a business for *profit.*" (emphasis supplied). This element of profit sharing has been said to be the "primary attribute" of, and a "necessary condition" for, a partnership. J. Crane & A. Bromberg, *Law of Partnership* 66 (1968). Thus, although two or more parties may associate together in a venture, each anticipating an individual profit to himself, no partnership is thereby created because the "chief characteristic of a joint adventure is a *joint* and not a *several* profit." *Fedderson v. Goode*, 112 Colo. 38, 145 P.2d 981 (1944) (emphasis supplied). *See Realty Development Co. v. Feit*, 154 Colo. 44, 387 P.2d 898 (1963) (financer of realty development not partner of developer because he held no joint interest in property and had no agreement to share in joint profits); *Breckenridge Co. v. Swales Management Corp.*, 185 Colo. 160, 522 P.2d 737 (1974) (landowner's continued control of a development project insufficient to create a partnership with the developer in the absence of an agreement to share the profits to result from the enterprise).

■ Further, an agreement to share the gross proceeds of a venture is not an agreement to share in the profits of that venture.

"The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived."

Section 7–60–107(1)(c), C.R.S. (1986 Repl. Vol. 3A)

■ In this case, the Master Development Contract provided that, while the "gross sales price" was to be divided equally between Mariposa and Buffalo Park, each party was to be separately and solely responsible for certain of the expenses involved. Hence, under that agreement, one of the parties could have enjoyed an individual profit, while the other might have sustained an individual loss. Under these circumstances, the parties cannot be said to be actual joint venturers.

It is true that the Master Development Contract contained provisions that contemplated the parties' development of other portions of the land for commercial and recreational purposes, and it provided that such development was to be on the "same basis" as the development of the residential property, "namely 50% of the investment shall be made by each party and 50% of the profits shall be shared by each party."

Before that project was to be started, however, the parties intended to "spell out" their specific duties, contributions and "ownership positions" by a further written agreement, and no other agreement was executed. Thus, this provision for future agreements is without significance in assessing their present relationship with reference to development of residential sites.

## II. The Contract Claims
### A.

Since neither Mariposa, Iowa Gulch, Ltd., nor Robert C. Murphy made any promise to plaintiffs to develop the land sold to them, the only basis for the entry of judgments against them on plaintiffs' claims of contract violation was the assertion that these defendants were participants in a joint venture with the other defendants. Since we have concluded that the trial court erred in determining that a joint venture existed, all judgments against these three defendants, based upon any contractual claim, must be reversed.

### B.

The judgments against Lewis, Buffalo Park, and Mountain Land for contract violation were based upon their violation of both the Master Development Contract and each of the IDAs. However, since we agree that appropriate judgments were entered against Mountain Land and Buffalo Park based upon their violation of the respective IDAs, we need not address the validity of plaintiffs' claim that they were third-party beneficiaries of the Master Development Contract.

Each IDA required Mountain Land or Buffalo Park to "proceed to develop" the property which was the subject of that agreement. It also provided that its "term" would be for four years, but no express provision explained what was to occur at the end of its term.

The trial court construed these two provisions in light of the circumstances of the parties, including the existence of the ILCs with Mariposa. In doing so, it concluded, and we agree, that each IDA contained an obligation for Mountain Land or Buffalo Park actually to develop the land within a period of four years and that their obligation was not merely to make a good faith effort to do so.

Mountain Land and Buffalo Park assert, however, that the evidence demonstrated that, as a matter of law, their performance of this obligation was rendered impossible by subsequent events. We disagree.

Their claim that performance was rendered impossible was based on the passage of state legislation which, it is argued, made the acquisition of water for a development project a much more lengthy process. However, there was no proof that the time required for such process prevent-

ed complete development within the four years contemplated by the agreements.

■ In order to establish the defense of impossibility of performance, it is necessary to demonstrate that changed circumstances have rendered "the promise vitally different from what reasonably should have been within the contemplation of both parties when they entered into the contract." *Littleton v. Employers Fire Insurance Co.*, 169 Colo. 104, 453 P.2d 810 (1969). If governmental action is asserted to have rendered a contract impossible to perform, such action must have made the performance illegal, either by requiring an unobtainable license or in some other way; a new regulation merely rendering the performance more costly does not result in a legal impossibility. *Seago v. Fellet*, 676 P.2d 1224 (Colo.App.1983). *See Beals v. Tri–B Associates*, 644 P.2d 78 (Colo.App. 1982). Thus, the defense of impossibility was not established in this case.

Further, the trial court found, with record support, that development was not prevented by some external change in conditions, but, rather, that it did not occur as intended because of Lewis' financial condition. Being supported by the evidence, this finding is binding on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

### III. The Concealment Claims

#### A.

■ The various ILCs and IDAs were executed by plaintiffs in the years 1971, 1972, and 1973. The trial court found that, at the time of the execution of these agreements, Lewis was aware of a serious problem in obtaining Jefferson County's approval of suitable access to that portion of the realty covered by those agreements. Because of this, and because of Lewis' financial condition, he was at that time turning his attention to the development of other areas of Mariposa's land, rather than to the property sold to plaintiffs.

Further, from July 1969 until December 8, 1972, because of Buffalo Park's prior violation of Jefferson County regulations in its sale of other land, an injunction was in effect against it, prohibiting it from selling any land without compliance with the county's subdivision regulations.

Finally, the trial court found that Buffalo Park had been consistently behind schedule in developing and selling the residential sites pursuant to the Master Development Contract and that the parties to that contract had amended it as a result of Buffalo Park's failure to develop.

It is undisputed that none of the foregoing facts was disclosed to plaintiffs when they entered into the ILCs or the IDAs. The trial court found that these facts were material to the plaintiffs' consideration of the two agreements and that a disclosure of these facts "might" have caused plaintiffs to act differently. *See Ackmann v. Merchants Mortgage & Trust Corp.*, 645 P.2d 7 (Colo.1982).

Moreover, the trial court found that Lewis was aware of each of these facts, but concealed them from plaintiffs with the intent that plaintiffs would act to their detriment by entering into the agreements. Thus, it concluded that actionable deceit had been practiced upon plaintiffs. *See Teodonno v. Bachman*, 158 Colo. 1, 404 P.2d 284 (1965); *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937). These findings and conclusions are supported by the record and justify the judgments for fraudulent concealment entered against the defendants Lewis, Buffalo Park, and Mountain Land.

#### B.

The same may not be said, however, of the judgments based on concealment against the other defendants.

With respect to Robert C. Murphy, the evidence is undisputed that he was not associated with Mariposa at the time of the execution of plaintiffs' agreements. He became Mariposa's managing agent sometime after the agreements with plaintiffs were executed. There is, therefore, no evidentiary basis for imposing any liability for fraud upon him and, thus, the judgment against him must be reversed.

With respect to Mariposa and its general partner, Iowa Gulch, Ltd., the trial court

made no finding either that some acknowledged agent of theirs had knowledge of all of the facts concealed or that any of them had an intent to conceal facts from plaintiffs. While the trial court's findings are not entirely clear upon the point, it appears that the fraud judgments against these two defendants were premised upon the existence of a joint venture among them and the other defendants which rendered them liable for the tortious actions of Lewis and his companies.

Since we have held that there was no joint venture between the two groups of defendants, the judgments against Mariposa and Iowa Gulch, Ltd., for fraud must be reversed.

### IV. The Remedy
#### A.

■ The amount of damages awarded to plaintiffs was based upon the district court's attempt to place plaintiffs in the same position they would have been in had the Lewis group of defendants completely developed their parcels of land and sold the sites at fair market value at the end of the four-year period after plaintiffs' purchase of the ground. In each case, the court awarded to them the amount they had paid under the ILC (less any amount still owing), plus 50% of the difference between the purchase price under the ILC and the fair market value of the parcel had it been fully developed at that time.

Plaintiffs complain, however, that the fair market value utilized by the court in computing damages ($5,662 per acre), which was the figure testified to by plaintiffs' evaluation expert, was less than the minimum re-sale price established by the IDAs for sales at that time. They argue that the date selected for determining the land's fair market value had to be one at which such value exceeded the minimum price. They also say that the evidence establishes 1981 as that date. We disagree. While plaintiffs' argument is logically appealing, their proof was insufficient to allow the court to apply the method of computation recommended by them.

Plaintiffs' evidence established the fair market value of developed parcels for 1975 through 1977 and for 1981 through 1983, but no evidence was presented to establish such value for 1978, 1979, or 1980. It is, therefore, impossible to determine from plaintiffs' evidence the relationship between the contracts' minimum re-sale price and the parcels' fair market value during those years, and, thus it is also impossible to conclude that the fair market value did not equal the minimum re-sale price until 1981, as contended by plaintiffs.

Under this state of the evidence, the trial court could have concluded either that, because of the extraordinarily high resale price, it was impossible for Buffalo Park or Mountain Land to perform the obligation to sell the parcels within four years, or that plaintiffs had failed to provide a sufficient evidentiary basis to support any award for damages. While no defendant advanced either contention, given these alternatives suggested by the record, plaintiffs cannot complain of the court's efforts to provide a reasonable estimate of the actual damages sustained by them. The method of computation employed by the court was reasonably calculated to accomplish that purpose.

#### B.

Plaintiffs also argue that the trial court failed adequately to compensate them for the fraud practiced upon them. We also disagree with this argument.

■ Under the "benefit of the bargain" rule for awarding damages for fraud, a plaintiff is entitled to receive "the difference between the actual value of the property *at the time of purchase* and its value at that time had the representation been true." *Wagner v. Dan Unfug Motors, Inc.*, 35 Colo.App. 102, 529 P.2d 656 (1974) (original emphasis). *See also Farmer v. Norm "Fair Trade" Stamp, Inc.*, 164 Colo. 156, 433 P.2d 490 (1967); *Neiheisel v. Malone*, 150 Colo. 586, 375 P.2d 197 (1962).

■ Here, in return for their promise to pay the purchase price, plaintiffs received both the right to obtain a deed to the parcel from Mariposa and Mountain Land's or

Buffalo Park's agreement to develop those premises. Had plaintiffs been made aware of the facts concealed from them at that time, the purchase price under the ILCs might have been less, the IDAs might have contained terms more favorable to them, or both agreements might have been different. However, even if there had been a full disclosure of the concealed facts, the evidence suggests that the Lewis group would still not have completely developed the land, as required by the IDAs. Thus, the difference between the parcel's undeveloped value at the time of its purchase and its developed value at some later time is irrelevant to the question of the damages incurred by plaintiffs as a result of the concealment.

The comparison that is required is between the value of the total consideration received by plaintiffs (realty plus agreement to develop) without disclosure of the concealed facts (value as represented) and the value of the same consideration had the prospective buyer been aware of all of the material facts (true market value). However, our attention has not been directed to any part of the record which would have provided to the trial court a basis for awarding damages by utilizing this approach.

The trial court concluded that the crux of the wrong done to plaintiffs was the failure to develop the land as agreed. It determined, therefore, that an award of damages that would approximate the benefits that plaintiffs would have received had the IDA been performed was a proper measure for determining the damages flowing from both the contract breach and the fraud. While we do not agree that the same measure of damages is to be applied to both wrongs, we do agree that the evidence would not support a greater award of damages than was granted.

### C.

■ Plaintiffs also assert that, since the trial court determined that defendants had engaged in fraudulent conduct, the court was obliged to enter an award of punitive damages. We cannot agree.

Section 13–21–102, C.R.S., authorizes, but does not require, an award of exemplary damages. An award of such damages "rests in the discretion of the trier of fact." *Mince v. Butters*, 200 Colo. 501, 616 P.2d 127 (1980).

Here, the trial court, as the fact finder, determined that, while fraud was committed, defendants had no evil intent. In addition, it found that, after the dispute between the parties arose, the defendants made good faith efforts to resolve the differences and to complete development. It declined, therefore, to award exemplary damages. In so doing, it did not abuse its discretion.

### D.

■ Finally, plaintiffs complain of the trial court's direction that they reconvey the land to Mariposa. Relying upon this court's opinion in *Ackmann v. Merchants Mortgage & Trust Corp.*, 659 P.2d 697 (Colo.App.1982), *rev'd on other grounds sub nom., Kopeikin v. Merchants Mortgage & Trust Corp.*, 679 P.2d 599 (Colo. 1984), plaintiffs claim that they should be allowed to keep the property, rather than reconveying it. We disagree.

The evidence supports the trial court's finding that plaintiffs acquired the land solely as an investment, not intending to keep it, and that, had the IDAs been performed by Mountain Land and Buffalo Park, plaintiffs would have conveyed it to third party purchasers upon receipt by them of the compensation due them under those agreements. Hence, as a condition of receiving damages from the defendants, which represented all of the monies that plaintiffs would have received had there been full performance by defendants, the court ordered that plaintiffs reconvey the property to Mariposa. We agree that an order directing plaintiffs to reconvey the land was proper.

In *Ackmann*, plaintiffs sued to obtain cancellation of purchase money notes that had been negotiated by the seller to a mortgage company, based upon the seller's fraudulent concealment. While the judgment in favor of plaintiffs also awarded

them an amount representing the prior payments they had made on the notes, they were not made whole because they did not recover the amounts they had paid to the seller, who had taken bankruptcy. Under these circumstances, this court held that no error was committed in allowing plaintiffs to keep the property, the true value of which was substantially less than its represented value.

Here, in contrast, the money judgment gave to plaintiffs everything that they would have received had the agreements been performed. Being fully compensated, they are not entitled to retain the realty.

In reaching this conclusion, we do not pass upon the question whether plaintiffs' conveyance should be to the Lewis group of defendants, against whom the judgment runs, rather than to Mariposa. Plaintiffs have no legal interest in this issue and none of the defendants has complained of this portion of the judgment.

### V. Pre–Judgment Interest

Defendants also claim that the trial court lacked jurisdiction to enter any award for pre-judgment interest and, in any event, such interest could not properly be awarded. We disagree.

In their amended complaint, plaintiffs sought to recover "interest." Therefore, when the district court entered its final judgment, it directed that the judgment include "allowable interest as prayed for on the actual damages...." The instant appeals were then lodged with this court without anyone seeking further clarification of the meaning of this portion of the judgment.

During the pendency of these appeals, defendants sought an order of limited remand to the trial court to allow them to satisfy the judgments entered and to allow that court "to issue satisfaction of such judgments should plaintiffs-appellants fail or refuse to execute such satisfactions." Although defendants' motion did not describe the dispute between plaintiffs and them with respect to the attempted satisfaction of the judgments, the very nature of their request indicated that some dispute

existed that required judicial resolution. Thus, this court remanded the cause to the trial court for the entry of satisfaction of the judgments "and for any auxiliary matters relating thereto."

Upon remand, the court considered the nature of the interest to which plaintiffs were entitled under the judgment and found that defendants' actions constituted a "wrongful withholding" within the meaning of § 5–12–102(1)(a), C.R.S. (1986 Cum. Supp.). Thus, plaintiffs were awarded interest on the damages from the effective date of that statute (July 1, 1979), which was a date after the time that plaintiffs would have been paid had defendants Mountain Land and Buffalo Park timely performed under the IDAs.

■ We do not agree that the trial court lacked jurisdiction to decide this issue. In order to enter satisfaction of the judgments, it was necessary to compute the amount of interest to which plaintiffs were entitled under the judgment, and this computation required a determination of the date from which such interest was to be calculated. Such determination was a matter that was "auxiliary" to satisfying the judgments within the meaning of our order of remand. *See Webster's Third New International Dictionary* 149 (1976) ("auxiliary" means "augmenting ... a basic power, potential or ability").

Likewise, we do not consider that the trial court acted improperly in "finding" that defendants had wrongfully withheld funds from plaintiffs. The determination whether a particular factual circumstance falls within the terms of the pre-judgment interest statute involves a question of law. *See Tripp v. Cotter Corp.*, 701 P.2d 124 (Colo.App.1985). The court's "finding" was nothing more than the expression of its legal conclusion—a conclusion that is fully reviewable by this court.

■ Further, plaintiffs' request for "interest" in their amended complaint was a sufficient request for an award of pre-judgment interest under the statute to permit an award of the same. *See Martinez v.*

*Jesik,* 703 P.2d 638 (Colo.App.1985); *Briggs v. Cornwell,* 676 P.2d 1252 (Colo.App.1983).

Finally, in *Isbill Associates, Inc. v. Denver,* 666 P.2d 1117 (Colo.App.1983), this court held that the words of the pre-judgment interest statute were not to be interpreted strictly. Rather, we concluded that the statute's legislative history required that "*all* cases are to be treated equally regarding the time interest begins to accrue." (emphasis supplied). *See Hott v. Tillotson–Lewis Construction Co.,* 682 P.2d 1220 (Colo.App.1983). *See also* § 13–21–101, C.R.S. (1986 Cum.Supp.) providing for pre-judgment interest from the date an action for personal injuries accrues. Thus, the trial court properly concluded that plaintiffs were entitled to pre-judgment interest.

### VI. Other Contentions

We have considered the other contentions made by the parties and have determined either that the foregoing conclusions render their discussion unnecessary or that they lack merit in light of the record and the trial court's findings.

The judgment against the defendants Ronald Lewis, Buffalo Park Development Co., and Mountain Land Construction Co. is affirmed. That part of the judgment awarding money damages against the other defendants is reversed, and the claims against them are dismissed.

VAN CISE and STERNBERG, JJ., concur.