**LOWELL STAATS MINING COMPANY, INC., a Colorado corporation, Third-party Plaintiff–Appellant,**

v.

**PIONEER URAVAN, INC., a Texas corporation, Defendant–Appellee,**

and

**Pioneer Corporation and Pioneer Nuclear, Inc., Third-party Defendants–Appellees.**

No. 86–2626.

United States Court of Appeals, Tenth Circuit.

June 19, 1989.

Joseph Coleman of Coleman, Brown & Jouflas, Grand Junction, Colo., for third-party plaintiff-appellant.

Theodore Allegra of Nelson, Hoskin, Groves & Prinster (Gregory K. Hoskin of Nelson, Hoskin, Groves & Prinster, and James Golden of Golden, Mumby, Summers & Livingston with him on the briefs), Grand Junction, Colo., for defendant-appellee and third-party defendants-appellees.

Before LOGAN, BARRETT, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Lowell Staats Mining Company, Inc. (Staats), an independent mining contractor, entered into a contract with Pioneer Uravan, Inc. (Uravan) to develop mining property owned by Uravan. When Uravan terminated the contract, Staats sued Uravan for breach of the contract. Uravan then brought a separate suit against Staats seeking to recover overpayments for ore deliveries under the contract. Staats filed a third-party complaint against Pioneer Corporation (Pioneer) and Pioneer Nuclear, Inc. (Nuclear) seeking to recover from these corporations any liability attributed to Uravan under the theories of the alter ego doctrine or piercing the corporate veil, and fraudulent conveyances. The cases were consolidated and removed to federal district court based on diversity jurisdiction, 28 U.S.C. § 1332 (1988).

At the conclusion of Staats' case, the district court granted the directed verdict motions of Pioneer and Nuclear on all claims in the third-party complaint. The jury returned a verdict against Uravan on its counterclaim and on Staats' breach of contract claim awarded $629,512 in damages. The district court denied Staats' request for prejudgment interest. *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 645 F.Supp. 254 (D.Colo.1986). Staats appeals, asserting the district court erred in granting the motions for directed verdict and denying the request for prejudgment interest.

## I

### Piercing the Corporate Veil

Staats contends the district court erred in granting directed verdicts to Pioneer and Nuclear. Nuclear asserts that Staats' third-party complaint contains no claim that Nuclear was liable as the alter ego, agent or instrument of Uravan. We agree. Staats' complaint seeks to impose liability under these theories solely upon Pioneer. In the Second Amended Pretrial Order, Nuclear objected to the implicit amendment of this claim to allege Uravan was the alter ego or instrumentality of Nuclear. Staats never amended the third-party complaint in response to Nuclear's objection. See Fed. R.Civ.P. 15. Staats is not entitled to reversal of the directed verdict against Nuclear on the claim of piercing the corporate veil, alter ego, instrumentality or agency, where the complaint fails to state such a claim for relief. *See A.R.A. Mfg. Co. v. Brady Auto Accessories, Inc.*, 622 P.2d 113, 114 (Colo. App.1980). Even if we treat Staats' claim against Nuclear as implicitly tried, the district court properly directed the verdict for Nuclear on the claim of piercing the corporate veil, alter ego, instrumentality or agency, because the evidence Staats presented fails to create an issue for the jury on this claim.

We will review the directed verdicts for Pioneer and Nuclear under the standard eloquently stated in *Motive Parts Warehouse v. Facet Enters.*, 774 F.2d 380 (10th Cir.1985):

> The standard of review in assessing whether a verdict should have been directed is the same standard applied by the trial court in passing on the motion for directed verdict initially, *i.e.*, whether the evidence is sufficient to create an issue for the jury. *Swearngin v. Sears Roebuck & Co.*, 376 F.2d 637, 639 (10th Cir.1967). The trial court may direct a verdict only where the evidence and all inferences to be drawn therefrom are so clear that reasonable minds could not differ on the conclusion. *Taylor v. Gilmartin*, 686 F.2d 1346 [1353–54] (10th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983). The

evidence must be viewed in the light most favorable to the party against whom the directed verdict is sought, and if, on the basis of the evidence and inferences to be drawn therefrom, reasonable and fair-minded persons might form different conclusions as to the facts in issue, a directed verdict is improper. *Zelinger v. Uvalde Rock Asphalt Co.,* 316 F.2d 47 [50] (10th Cir.1963).

774 F.2d at 385–86. With this standard in mind, we have thoroughly reviewed the record in this case, and conclude the district court's ruling must be affirmed.

■ In the third-party complaint, Staats sought to pierce Uravan's corporate veil and recover from Pioneer, the sole shareholder of Uravan. Staats alleged Uravan was the alter ego or an instrumentality of Pioneer. The alter ego doctrine is a means by which creditors may hold stockholders personally liable for corporate obligations. *Rosebud Corp. v. Boggio,* 39 Colo.App. 84, 561 P.2d 367, 371 (1977).

Because this is a suit based on diversity jurisdiction, we apply the law of the forum state, in this case Colorado. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Brady v. Hopper,* 751 F.2d 329, 332 (10th Cir.1984). In *Micciche v. Billings,* 727 P.2d 367 (Colo.1986) the Colorado Supreme Court discussed piercing the corporate veil, stating:

> Generally, a corporation is treated as a legal entity separate from its shareholders, thereby permitting shareholders to commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debts. Krendl & Krendl, *Piercing the Corporate Veil: Focusing The Inquiry,* 55 Den.L.J. 1 (1978). When, however, the corporate structure is used so improperly that the continued recognition of the corporation as a separate legal entity would be unfair, the corporate entity may be disregarded and corporate principals held liable for the corpora-

tion's actions. *Id.* at 2. Thus, if it is shown that shareholders used the corporate entity as a mere instrumentality for the transaction of their own affairs without regard to separate and independent corporate existence, or for the purpose of defeating or evading important legislative policy, or in order to perpetrate a fraud or wrong on another, equity will permit the corporate form to be disregarded and will hold the shareholders personally responsible for the corporation's improper actions. *See Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 350, 421 P.2d 735, 739 (1966); *Gutheil v. Polichio,* 103 Colo. 426, 431, 86 P.2d 972, 974 (1939); *La Fond v. Basham,* 683 P.2d 367, 369 (Colo.App.1984); Krendl & Krendl, *supra* at 28–43.

*Micciche,* 727 P.2d at 372–73.

A variety of factors are to be considered by the court in making the ultimate determination whether recognition of the separate corporate entity would result in injustice in a given case.[1] The determination of whether a subsidiary is an instrumentality of the parent corporation is primarily a question of fact based upon consideration of the following factors:

> (1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the

---

**1.** Staats asserts the district court considered only the lack of corporate formalities in dismissing its claim of piercing the corporate veil. Appellant's brief at 32. We do not read the district court's decision to be based solely on the lack of legal corporate formalities. Regardless of the basis of the district court's decision, we have reviewed the evidence *de novo* based on all of the factors discussed in *Fish v. East,* 114 F.2d 177, 191 (10th Cir.1940).

subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Fish v. East,* 114 F.2d 177, 191 (10th Cir. 1940) (applying Colorado law). *Fish* has been cited with approval in *Friedman & Son, Inc. v. Safeway Stores,* 712 P.2d 1128, 1131 (Colo.App.1985), and *New Sheridan Hotel & Bar, Ltd. v. Commercial Leasing Corp.,* 645 P.2d 868, 869 (Colo.App.1982). All of the factors discussed in *Fish* need not be present for a court to determine a subsidiary is the alter ego of the parent corporation. *Friedman,* 712 P.2d at 1131; *see also DeWitt Truck Brokers v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 687 (4th Cir.1976).

█ We have reviewed the record in the light most favorable to Staats under the criteria cited in *Fish.* Pioneer owns all of the capital stock of Uravan. The fact that Pioneer owns all the stock of Uravan, standing alone, is an insufficient basis to depart from the general rule that the corporation and its shareholder are to be treated as distinct legal persons. *Industrial Comm'n v. Lavach,* 165 Colo. 433, 439 P.2d 359, 361 (Colo.1968). Pioneer and Uravan shared some common officers and directors. Exhibits 45, 47, 48, 49, 50, 51. Uravan and Nuclear also shared some common officers. Exhibits 30, 45, 47, 48, 50, 102. The identity of officers and directors is insufficient to allow corporate veil piercing. *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1364 (10th Cir.1974) (applying Kansas law); *Taylor v. Standard Gas & Elec. Co.,* 96 F.2d 693, 705 (10th Cir.1938) (applying Oklahoma law), *rev'd on other grounds,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). Uravan's financial statements show it received financial advances from Pioneer of $456,000 in 1982, Exhibit 103; $292,000 in 1981, Exhibit 104; $3,887,000 in 1980, Exhibit 105; and $5,000,000 in 1979, Exhibit 106. These advances were treated as long-term loans on Uravan's financial statements. Pioneer will not be exposed to liability for the obligations of Uravan when Pioneer contributes funds to Uravan for the purpose of assisting Uravan in meeting its financial obligations and not for the purpose of perpetuating a fraud. *Hill v. Dearmin,* 44 Colo.App. 123, 609 P.2d 127, 128 (1980). The record contains no evidence these advances were made for fraudulent purposes.

█ Based solely on exhibits and no elucidative testimony, Staats asserts Uravan is undercapitalized. The obligation to provide adequate capital begins with incorporation and is a continuing obligation thereafter during the corporation's operations. *DeWitt Truck Brokers,* 540 F.2d at 686. Inadequate capitalization means capitalization very small in relation to the nature of the business of the corporation and the risks the business necessarily entails. *J–R Grain Co. v. FAC, Inc.,* 627 F.2d 129, 135 (8th Cir.1980); *accord Anderson v. Abbott,* 321 U.S. 349, 362, 64 S.Ct. 531, 538, 88 L.Ed. 793 (1944); *DeWitt Truck Brokers,* 540 F.2d at 685; *Luckenbach S.S. Co. v. W.R. Grace & Co.,* 267 F. 676, 681 (4th Cir.), *cert. denied,* 254 U.S. 644, 41 S.Ct. 14, 65 L.Ed. 654 (1920). Uravan was incorporated in 1975. Exhibit 51. Uravan's 1979 financial statements show $10,000 of capital stock had been issued as of December 31, 1978. In addition to the paid in capital, Uravan had an unappropriated earned surplus of $622,595 and $26,898,678 in assets consisting of accounts receivable, inventories, plants, and miscellaneous other assets. Exhibit 106. Our review of the record shows Staats failed to establish what an adequate level of capitalization would be in a uranium exploration business, leaving the jury and this court to speculate whether Uravan was undercapitalized. Staats' evidence on undercapitalization was insufficient to create an issue for the jury.

█ Staats contends that Uravan did not act independently of Pioneer because Uravan's operations manager, Mr. Robison, reported the status of the Staats' mining project directly to a Nuclear vice president, Mr. Ruhfus, *see, e.g.,* Exhibits 129, 130;

and Uravan's development of the San Miguel mill project was subject to approval by Pioneer's board of directors. Exhibit 28.

Exercise of some degree of supervision by a 100% stockholder is not sufficient to render the subsidiary its instrumentality or alter ego. "That a stockholder should show concern about the company's affairs, ask for reports, sometimes consult with its officers, give advice, and even object to proposed action is but the natural outcome of a relationship * * *." *United States v. Elgin, J. & E. Ry.*, 298 U.S. 492, 503–504, 56 S.Ct. 841, 844, 80 L.Ed. 1300 (1936). In *Steven v. Roscoe Turner Aeronautical Corporation, supra*, 324 F.2d [157,] 162 [7th Cir.1963], similar supervisory concern was held to be "sound business practice" which did not raise "a genuine factual issue under the instrumentality rule." Such participation in a subsidiary's affairs does not amount to the domination of day to day business decisions and disregard of the corporate entity necessary to impose liability on a parent. *Davis v. John R. Thompson Co.*, 239 Ill.App. 469, 475 (1926); *Dregne v. Five Cent Cab Co.*, 381 Ill. 594, 602–603, 46 N.E.2d 386 (1943); *United States v. Reading Co.*, 253 U.S. 26, 62–63, 40 S.Ct. 425 [434], 64 L.Ed. 760 (1920).

*American Trading & Prod. Corp. v. Fischbach & Moore, Inc.*, 311 F.Supp. 412, 415 (N.D.Ill.1970).

■ Staats contends corporate assets were commingled when Uravan began liquidating its uranium assets. A review of the record indicates Uravan was in charge of the San Miguel Mill project, and held title to the site of the uranium mill. Pursuant to a settlement agreement among Uravan, Nuclear and Philadelphia Electric Company (PEC), PEC paid Nuclear $94,000 as reimbursement for the final installment on the millsite property. Exhibit 39. Without more evidence we cannot determine whether this payment was without consideration or otherwise was improper. The transfer pursuant to the settlement agreement of other Uravan assets to Umetco by C.D. Culver, the president of Pioneer, is without significance because Culver was also the president of Uravan at the time of these transfers. Exhibits 42, 43, 44. Staats has failed to offer any evidence the transfer of other Uravan assets to Nuclear's Creede project was improper. Exhibit 108. We are unable to determine the disposition of Uravan assets listed in Exhibits 109 and 110. Even if we assume these transactions prove commingling of assets, this factor alone is an insufficient basis to impose liability on Pioneer and Nuclear. *See Harding v. Lucero*, 721 P.2d 695, 698 (Colo.App.1986) (in which application of alter ego doctrine was based on control of corporation, commingling of corporate and personal assets, and sale of corporate property by president in his personal capacity); and *Ward v. Cooper*, 685 P.2d 1382, 1383 (Colo.App.1984) (in which the court considered several factors in addition to the commingling of assets).

■ Staats contends Pioneer's consolidated financial reports with its subsidiary establish Uravan is an instrumentality of Pioneer. This argument is without merit. The Internal Revenue Code allows a parent corporation to file consolidated income tax returns with its subsidiaries when the parent owns at least eighty percent of the subsidiary. 26 U.S.C. § 1501 (1982). Section 1501 allows a parent corporation to shelter taxable income from a profitable subsidiary by offsetting it against losses from an unprofitable subsidiary. It is a common business practice. Additionally, Uravan maintained separate records and financial reports. Where Staats has failed to prove any dominion or control by either Pioneer or Nuclear over Uravan, we do not consider the fact of consolidated financial reports to be a sufficient basis to impose liability under the alter ego doctrine. *Compare Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F.Supp. 1442, 1447 (E.D.Tex.1983) (consolidated income tax returns becomes a factor in proving the alter ego relationship when corporate domination has been established).

■ In order to hold Pioneer liable for Uravan's obligations, Staats must prove the corporate entity was used to defeat

public convenience, or to justify or protect wrong, fraud or crime. *Fink v. Montgomery Elevator Co.*, 161 Colo. 342, 350, 421 P.2d 735, 739 (1966). The possibility that Staats may have difficulty enforcing a judgment against Uravan alone is not the type of injustice that warrants piercing the corporate veil. *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir.1980) (applying Oklahoma law). Staats argues it has proven injustice because unsecured creditors, like itself, are not required to "accept as a risk without remedy the possibility that a corporation will transfer the assets of its business to its shareholders without consideration," citing *Ficor, Inc. v. McHugh*, 639 P.2d 385, 394 (Colo.1982). However, Staats has failed to present evidence that Uravan transfered its assets without consideration. We have found no other evidence in the record establishing fraud or some other wrong. We hold the district court did not err in directing a verdict for Pioneer and Nuclear on Staats' claim of piercing the corporate veil, alter ego, instrumentality or agency. Based upon the evidence presented by plaintiff and all inferences to be drawn therefrom, reasonable minds could not differ on the conclusion. The evidence is clearly insufficient.

## II

### Fraudulent Conveyances

Staats asserts the district court erred in directing a verdict on its claim that Uravan fraudulently conveyed its assets to Pioneer and Nuclear to hinder creditors. In reviewing the propriety of the directed verdict, we must review the evidence and inferences therefrom in the light most favorable to Staats and determine whether an issue for the jury exists on the claim of fraudulent conveyances. *Motive Parts Warehouse,*

774 F.2d at 385–86. In this diversity case we apply Colorado law.

Colo.Rev.Stat. § 38–10–117 (Repl.Vol. 1982) defines fraudulent conveyances as every conveyance of land or goods made with the intent to hinder, delay, or defraud creditors of their lawful suits, damages or debts.[2] The question of fraudulent intent, under this statute, is a question of fact, Colo.Rev.Stat. § 38–10–120 (Repl.Vol.1982), but this provision does not deprive the courts of the power to rule as a matter of law that the facts are insufficient to prove fraudulent intent. *People ex rel. Wilson v. Court of Appeals*, 28 Colo. 442, 65 P. 42, 43 (1901) (citing *Burr v. Clement*, 9 Colo. 1, 9 P. 633, 639 (1885)). A conveyance is not fraudulent solely because of lack of valuable consideration. Colo.Rev.Stat. § 38–10–120.

Staats has the burden of proving the conveyances were fraudulent. *Sickman v. Abernathy*, 14 Colo. 174, 23 P. 447, 451 (1889). Staats contends that Pioneer and Nuclear have the burden of proving the conveyances were for valuable consideration and without intent to hinder creditors because of their relationship as parent and subsidiary corporations. Staats has cited no authority for this proposition other than cases based on family relationships. *See United States v. Morgan*, 554 F.Supp. 582, 585–86 (D.Colo.1982) (husband-wife conveyance); *Myers v. Hayden*, 82 Colo. 98, 257 P. 351 (1927) (father-daughter conveyance). We find these cases distinguishable because the relationship of parent and subsidiary corporations is not analogous to the relationship between family members. Parent and subsidiary corporations are treated as independent legal entities unless the corporate veil is pierced because the corporations have ignored their separate identities. Staats failed to establish the liability of Pioneer and Nuclear under the

2. Section 38–10–117 states:
   Conveyances to defraud creditors void. Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action or upon the rents and profits thereof made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void.

alter ego doctrine; likewise, it failed to establish the close relationship between these entities necessary to shift the burden of proof to them on the claim of fraudulent conveyances.

■ Staats' proof of fraudulent conveyances was based solely upon exhibits admitted without any testimony explaining the significance of the exhibits. Exhibit 39 is a settlement agreement dated July 31, 1984 among Uravan, Nuclear, PEC, and Umetco Minerals Corporation. The settlement agreement terminates a 1978 letter agreement whereby PEC made advance payments to Uravan for development of uranium properties. The letter agreement grants PEC the right to receive certain assets upon Uravan's notice that it will no longer perform under the letter agreement. The settlement agreement conveys the San Miguel millsite and AE–26 uranium property to PEC. PEC and Uravan convey other uranium properties to Umetco. The settlement agreement provides PEC will pay $94,000 to Nuclear for the final installment on the millsite. This settlement agreement alone does not indicate the transaction is fraudulent or made with the intent to hinder or delay creditors. Staats has presented no evidence to overcome the presumption of innocence in this transaction.

Exhibit 108 lists equipment and supplies transferred to Nuclear's Creede project, Exhibit 48 at 28, from Uravan in 1983 and 1984. Exhibits 109 and 110 list Uravan's vehicles and mining equipment, but we cannot determine the disposition of these assets from the exhibits. These exhibits without further development by testimony fail to show Pioneer's or Nuclear's intent to hinder, delay or defraud creditors.

■ Exhibits 103, 104, 105 and 106 are Uravan's financial statements for 1979 through 1982. These financial statements show losses in 1981 and 1982. Staats asserts these losses indicate Uravan's insolvency and therefore any conveyances after 1982 were fraudulent. Staats' argument ignores the fact that Colorado has not adopted the balance-sheet approach to insolvency. *Love v. Olson,* 645 P.2d 861, 864 (Colo.App.1982). The Colorado courts treat insolvency as a fact question based on several factors. These factors include: whether a debtor, in the ordinary course of its business, is able to pay its debts with money or by application of its other assets; whether the debtor has so little property left after the alleged fraudulent conveyance that its creditors' ability to collect their debts through judicial process is impaired; and the type of business in which the debtor is engaged. *Id.* Staats presented no evidence on Uravan's ability to pay its debts in the ordinary course of business, nor whether Uravan's assets remaining after the conveyance to PEC, Umetco or Nuclear are insufficient to pay other creditors, nor on the nature of finances in the uranium business. Without more, these exhibits, which establish only the existence of conveyances and operating losses for two years, fail to meet Staats' burden of proving the conveyances hindered, delayed or defrauded creditors under Colo.Rev.Stat. § 38–10–117. The district court's order directing a verdict for Pioneer and Nuclear on Staats' claim of fraudulent conveyance is affirmed.

### III

#### *Misrepresentation*

■ Staats claims the district court erred in dismissing by directed verdict its claim that Pioneer and Nuclear negligently or fraudulently misrepresented they would install a vent hole at the mine Staats was developing for Uravan.

To establish a claim of *negligent misrepresentation,* Staats had to prove the following elements:

> "One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

*First Nat'l Bank v. Collins,* 44 Colo.App. 228, 616 P.2d 154, 155 (1980) (quoting *Restatement (Second) Torts* § 552 (1976)). The elements of a cause of action for *fraudulent misrepresentation* are: (1) a representation; (2) of material facts; (3) that is false or misleading; (4) made with knowledge of the falsity or with indifference to its truth or falsity; (5) the party claiming fraud must have relied on the representation; (6) have had a right to have relied on it; and (7) acted in accordance with the reliance; and (8) in doing so suffered damage. *See Zimmerman v. Loose,* 162 Colo. 80, 88, 425 P.2d 803, 807 (1967) (citing *Morrison v. Goodspeed,* 100 Colo. 470, 68 P.2d 458, 462, 71 P.2d 154 (1937)).

Viewing the evidence in a light most favorable to Staats, we find Staats failed to establish an issue for the jury on its claim of negligent or fraudulent misrepresentation. The evidence established that Staats entered into the mine development contract solely with Uravan. Exhibit 1. Staats' officers met with Mr. Robison, Mr. Bethurum and Mr. Ruhfus in January 1981 to discuss the vent hole. Exhibit 4. Mr. Robison was the manager of operations for Uravan. Mr. Bethurum was the vice president of both Uravan and Nuclear. Mr. Ruhfus was the manager of operations for Nuclear. Mr. Robison's memorandum of the meeting indicates: "We committed to providing Staats with two working faces and a vent hole as soon as possible." Exhibit 4. A Staats employee testified: "As I understood it, [the commitment for providing the vent hole] came from all those parties concerned [both Nuclear and Uravan]."

The evidence presented by Staats fails to establish Pioneer's involvement in the promise to provide a vent hole. As to the claim against Nuclear, even if Messrs. Bethurum and Ruhfus were participating in the January meeting in their capacities as Nuclear employees, Staats has failed to prove Nuclear was acting in the course of its business or had a pecuniary interest in the mine, or that Staats justifiably relied on their representation to provide a vent hole where Nuclear was not a party to the mining contract. Additionally, a claim of mis-

representation, either negligent or fraudulent, cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time. *State Bank of Wiley v. States,* 723 P.2d 159, 160 (Colo.App.1986). To render the nonperformance of a promise to be performed in the future fraudulent, the promise to perform must be accompanied by an intent not to perform. *Farmers Union Co-op. Royalty Co. v. Southward,* 183 Okl. 402, 82 P.2d 819, 822 (1938) (cited with approval in *State Bank of Wiley,* 723 P.2d at 160). Staats presented no evidence of Nuclear's intent, prior to the January 1981 meeting, not to provide the vent hole as allegedly promised. Where Staats failed to prove essential elements of these claims of misrepresentation, the district court did not err in directing verdicts for Nuclear and Pioneer on both the negligent and fraudulent misrepresentation claims and on any general tort claim of Staats based on agency.

■ Likewise, the district court properly directed a verdict for Nuclear and Pioneer on Staats' claims for punitive damages. In order to be entitled to punitive damages, Staats had to prove the conduct of Pioneer and Nuclear caused actual damages. Failure to prove the existence of actual damages means that no punitive damages may be recovered. *Leo Payne Pontiac, Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477, 479 (1971), *rev'd on other grounds,* 178 Colo. 361, 497 P.2d 997 (1972); Colo.Rev.Stat. § 13–21–102(1)(a) (Repl.Vol.1987). There was no potential for actual damages where all of Staats' claims against Nuclear and Pioneer had been dismissed.

### IV

#### *Prejudgment Interest*

Staats asserts the district court erred in denying Staats' request for prejudgment interest pursuant to Colo.Rev.Stat. § 5–12–102 (Supp.1988) on the verdict of $629,512 awarded against Uravan on

Staats' breach of contract claim.[3] Initially the district court awarded prejudgment interest of eight percent per year. Subsequently the district court amended the judgment and deleted all prejudgment interest. *Lowell Staats Mining Co.*, 645 F.Supp. at 255.

◼ In diversity actions the federal court looks to state law in order to determine the allowability of prejudgment interest on a recovery. *Casto v. Arkansas–Louisiana Gas Co.*, 562 F.2d 622, 625 (10th Cir.1977). The right to interest, independent of an agreement to pay it, is statutory. *Weaver v. First Nat'l Bank*, 138 Colo. 83, 330 P.2d 142, 149 (1958). The mining contract between Staats and Uravan contains no agreement for the payment of interest on any judgment awarded. Exhibit 1. Colo.Rev.Stat. § 5–12–102 makes the following pertinent provisions for the award of statutory interest:

(1) Except as provided in section 13–21–101, C.R.S., when there is no agreement as to the rate thereof, creditors shall receive interest as follows:

(a) When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant.

(b) Interest shall be at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs.

(2) When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

(3) Interest shall be allowed as provided in subsection (1) of this section even if the amount is unliquidated at the time of wrongful withholding or at the time when due.

The district court, after reviewing this statute and the various Colorado Court of Appeals cases construing this section, determined the provisions of § 5–12–102 were not applicable based upon the following reasoning:

I cannot, however, agree with the loose construction which those cases [*Isbill Associates, Inc. v. City and County of Denver*, 666 P.2d 1117 (Colo.App.1983); *LaFond v. Basham*, 683 P.2d 367 (Colo. App.1984); and *Hott v. Tillotson–Lewis Construction Co.*, 682 P.2d 1220 (Colo. App.1983)] have bestowed on the statute. Specifically, I take issue with applying the statutory phrase "money or property . . . withheld" to all garden-variety breach of contract cases. Such an interpretation strays too far from the plain, ordinary meaning of the statutory language. I disagree with *Isbill* and its progeny to the extent they have expanded § 5–12–102 to a point where *all* contract actions become actions for "money . . . withheld."

*Lowell Staats Mining Co.*, 645 F.Supp. at 259. The district court did not err in reserving the issue of interest computation to itself. *Wood v. Hazelet*, 77 Colo. 442, 237 P. 151, 152 (1925).

[W]here it is unquestionably clear that the jury allowed no interest, or where the court reserved the question of allowance of interest until after verdict, and it is clearly ascertainable from the verdict or from uncontroverted facts, the court may

---

**3.** Originally Staats claimed prejudgment interest without distinguishing whether the request was based on moratory interest or the statute. Complaint at 5. The district court dismissed Staats' request for interest on both grounds. *Lowell Staats Mining Co.*, 645 F.Supp. 254. Staats has appealed only the district court's denial of interest based on the statute. Appellant's brief at 45–49.

make the computation, and add the interest to the verdict.

*Id.* In the case of a general verdict, the district court is required to make findings regarding the entitlement to prejudgment interest, the rate of interest and the date from which interest accrues. *Tripp v. Cotter Corp.*, 701 P.2d 124, 126 (Colo.App. 1985). *Accord Pierson v. United Bank*, 754 P.2d 431, 432 (Colo.App.1988). The district court found Staats was not entitled to prejudgment interest under the statute. We disagree.

In Colorado the determination whether a particular factual circumstance falls within the prejudgment interest statute is a question of law. *Rocky Mountain Mach. Co. v. First Nat'l Bank*, 767 F.2d 722, 725 (10th Cir.1985); *Colorado Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 410 (Colo. App.1987); *Tripp*, 701 P.2d at 126–27 (citing *Hayes v. North Table Mountain Corp.*, 43 Colo.App. 467, 608 P.2d 830, 832 (1980)). Therefore we review under a *de novo* standard the district court's decision to deny Staats' request for prejudgment interest under Colorado law. *Colorado Performance*, 754 P.2d at 410. *Cf. U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 n. 43 (10th Cir.1988), in which the court applied an abuse of discretion standard of review to determine the award of prejudgment interest based on *Utah law* and federal statutes.

In the absence of a state supreme court ruling, a federal court must follow an intermediate state court decision unless other authority convinces the federal court that the state supreme court would decide otherwise. *Delano v. Kitch*, 663 F.2d 990, 996 (10th Cir.1981), *cert. denied*, 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982) (citing *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)); *accord Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984). The Supreme Court states:

> In [the absence of a state supreme court decision] a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the

> rule is unsound in principle or that another is preferable.... [I]t is the duty of the [federal court] in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of "general law" and however much the state rule may depart from prior decisions of the federal courts.

*West*, 311 U.S. at 236–37, 61 S.Ct. at 183.

The district court's decision to deny Staats' request for prejudgment interest ignores the state appellate court decisions which have allowed other claimants to recover prejudgment interest in similar situations. The district court has failed to cite us to other authority which convinces it that the Colorado Supreme Court would decide otherwise than as the Colorado Court of Appeals in *Isbill, LaFond* or *Hott*.

In *Isbill*, the Colorado Court of Appeals was asked to review the propriety of a district court's award of prejudgment interest in a property damage case. An engineering consulting firm brought an action to recover for water damage to technical draws. The court found the statutory language that prejudgment interest would be awarded only when "money or property has been wrongfully withheld" to be unclear, and resorted to legislative history to determine the intent of the legislature in using this language. The court stated:

> A senator who was a joint sponsor of the bill which repealed and reenacted § 5–12–102 in its present form explained, during hearings on the bill, the previous Colorado law on prejudgment interest, the changes in the statute, and its precise implications. He explained that the new section was "an attempt to clear up the mistakes of the past." Specifically he noted that:
>
> > "All plaintiffs, or defendants who counterclaim, for that matter, are entitled to interest from the time the action accrued, not from the time the suit was filed, not from the time judgment was entered, but from the time they were wronged.... The present state of the law encourages the wrongdoer

to stall because in some cases they have the money until judgment or settlement."

Senate Hearings on S. 463 (March 12, 1979).

*Isbill,* 666 P.2d at 1121–22. Based on its understanding of the legislative history, the court affirmed the award of prejudgment interest on property damages from the date of injury. The court's liberal construction of the statute has been cited with approval in *Colorado Performance,* 754 P.2d at 411; and *Bassett v. Eagle Telecommunications, Inc.,* 750 P.2d 73, 75 (Colo. App.1987).

In *Hott,* the plaintiffs brought an action for breach of a construction contract, but the trial court failed to award them prejudgment interest. Upon appeal, the Colorado Court of Appeals concluded for the same reasons stated in *Isbill* that "prejudgment interest may be awarded in a breach of construction contract case, even if the amount is unliquidated at the time of the wrongful withholding." *Hott,* 682 P.2d at 1223. In *LaFond,* the plaintiffs brought an action against a construction contractor for breach of contract. The Colorado Court of Appeals affirmed the award of prejudgment interest from the time the action accrued, citing *Isbill. La Fond,* 683 P.2d at 370.

■ Based upon our reading of these three cases, we can find no indication that the Colorado Supreme Court would not follow these cases and award prejudgment interest on the breach of contract claim of Staats. An award of prejudgment interest is also supported by the Colorado Court of Appeals' decision in *Jasken v. Sheehy Constr. Co.,* 642 P.2d 58 (Colo.App.1982), in which a subcontractor brought an action against a general contractor to recover expenses and lost profits caused by the general contractor's unilateral termination of the contract. The Court of Appeals upheld the trial court's award of prejudgment interest from the date of the general contractor's refusal to pay, stating: "[T]he court did not err when it awarded interest on the wrongfully withheld sum even though the exact amount was unliquidated until the date of judgment." *Id.* at 60. Under Colorado case law, we believe Staats is entitled to prejudgment interest under the provisions of § 5–12–102.

Staats asserts it is entitled to an interest rate in excess of the eight percent provided by statute and that the district court erred in excluding its Exhibit 119 which calculated interest on actual damages at 107 percent of the prime rate. Where the district court has reserved for itself the determination of interest, it was not error for the district court to exclude Exhibit 119 from the jury's consideration.

■ The Colorado prejudgment interest statute allows the court to award interest in "an amount which fully recognizes the gain or benefit realized by the person withholding such money," § 5–12–102(1)(a), or at the statutory rate of eight percent per annum compounded annually, § 5–12–102(1)(b). The rate of interest is the statutory rate in the absence of specific proof of the benefit derived by the defendant from its breach. *Davis Cattle Co., Inc. v. Great Western Sugar Co.,* 393 F.Supp. 1165, 1194 (D.Colo.1975), aff'd, 544 F.2d 436 (10th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). In our review of the record we could not find any specific proof of the benefit Uravan gained by wrongfully withholding Staats' lost profits after November 1, 1981. Exhibits 32 and 33 are interoffice memoranda from Mr. Ruhfus to Mr. Bethurum, both officers of Nuclear. Each memorandum loosely refers to the cost of money being twenty percent or ten percent above the inflation rate for purposes of estimating a settlement proposal with Staats. These exhibits are insufficient to establish an alternate interest rate for Uravan, because the exhibits do not refer to Uravan and the interest rates are mere talk for the purpose of discussing a settlement position rather than a rate Uravan was obligated to pay. Exhibit 45 is Pioneer's annual financial report for 1980. It lists one interest rate at 107 percent above prime rate. Staats has failed to make any showing that this rate should apply to Uravan, a separate corporate entity. Where

Staats has failed to prove Uravan's cost of money, Staats is entitled to interest at the statutory rate of eight percent per annum compounded annually. § 5–12–102(1)(b).

We were unable to determine on the record before us the date from which interest accrues. We remand this case for determination of that date and entry of prejudgment interest consistent with this opinion.

### V

We AFFIRM the district court's directed verdict dismissing Staats' third-party complaint against Pioneer and Nuclear. We REVERSE the district court's denial of prejudgment interest and remand for entry of an order consistent with this decision.

AFFIRMED IN PART and REVERSED IN PART.