CITY AND COUNTY OF DENVER, a municipal corporation, and Winter Park Recreational Association, a non-profit corporation, Plaintiffs–Appellees,

v.

BOARD OF ASSESSMENT APPEALS OF the STATE OF COLORADO; Board of Equalization of Grand County; Lorene Linke, W.A. Needham, Herbert Ritschard, and Richard Leonard, as members of the Grand County Board of Equalization; Lisa M. Underbrink, Grand County Assessor; and Margaret J. Alt, Grand County Treasurer, Defendants–Appellants.

No. 87CA0312.

Colorado Court of Appeals, Div. I.

May 11, 1989.

Rehearing Denied June 29, 1989.

Certiorari Denied Nov. 13, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, and Anthony J. DiCola, Hot Sulphur Springs, for defendants-appellants.

Richard P. Hall and Phelps, Singer & Dunn, Alan Gary Dunn, Denver, for plaintiffs-appellees.

Opinion by Justice HODGES.*

Improvements and facilities on a part of the ski area operated by the Winter Park Recreational Association (Association) were

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

assessed for the tax year 1984 by the Grand County Assessor. In previous years no such taxes had been imposed. The Association's protests to the assessor, to the Grand County Board of Equalization, and finally to the Board of Assessment Appeals of the State of Colorado (State Board) were denied. The Association and Denver appealed to the district court, which entered judgment declaring the assessment invalid and unenforceable. The State Board and taxing officers of Grand County filed this appeal urging reversal of this judgment. We affirm.

## I. *Partial Dismissal of Initial Appeal*

As initially filed, this appeal involved the 1984, 1985, and 1986 assessments which covered the improvements, ski facilities, and other items of personal property located on most of the area generally known as the Winter Park Ski and Recreational Area (ski area). The 1984 assessment was only on improvements owned by the Association on a tract of land which the Association leases from the Colorado Arlberg Club. Each year's assessment proceeding was the subject of separate cases in the district court. For the purpose of review and disposition, the district court consolidated the cases pursuant to C.R.C.P. 42(a) and entered one judgment invalidating all three assessments.

Denver and the Association moved to dismiss this appeal asserting that the defendants had failed to file their notice of appeal to this court within the time required by § 39–8–108, C.R.S. (1986 Cum. Supp.). In *Denver v. Board of Assessment Appeals*, 748 P.2d 1306 (Colo.App.1987), this appeal was partially dismissed as to the 1985 and 1986 assessments, however, the motion to dismiss was denied as to the 1984 assessment which, therefore, is the sole subject of this appeal.

## II. *History of Ski Area*

The historical and factual background of the ski area and the Association was an important basis for many of the district court's findings and its judgment, which was based upon the consolidated record of the three proceedings before the other tribunals. A brief resume of this history is a necessary foundation for our disposition.

In 1938, the U.S. Forest Service issued to Denver a special permit for its use of approximately 6400 acres of land for a winter sports development near the West Portal of the Moffat Tunnel in Grand County, Colorado. Shortly thereafter, the Denver City Council enacted an ordinance accepting this federal grant and providing that the land is to be used for the purpose of constructing park improvements including ski-tows and ski-ways. The use of additional adjacent land was acquired in 1939 when Denver entered into a license agreement with the Moffat Tunnel Improvement District to use a tract of its land for the erection of ski and recreation improvements. A 90–acre portion of the ski area is owned in fee by Denver. Finally, in 1974, the Association leased an adjoining tract of land from the Arlberg Club for use in extending the ski area.

Until about 1950, the ski area was administered by Denver's Department of Parks and Improvements. The operation and development of the ski area became a problem for Denver because it did not have the expertise to provide professional management and the buildings and ski facilities were becoming dilapidated. For these reasons, Denver became concerned about its liability because of the increasing public use of the ski area.

The then Mayor, Quigg Newton, and the Manager of the Department of Improvements and Parks consulted with several prominent ski enthusiasts and business people who desired to maintain and improve the ski area. As a result, it was decided that a nonprofit corporation would be created to manage and develop the ski area for Denver. Pursuant to this concept, the Association was incorporated in July 1950 for the sole purpose, as expressed in the articles of incorporation, of entering into a contract with Denver to act as its agent in the operation, maintenance, and development of the ski area.

Management of the Association was vested in a board of trustees who were

precluded under the articles of incorporation from deriving any personal pecuniary gain from the operation of the ski area. The articles also provided that:

"All monies realized by the corporation either from the operation of the area or from the City and County of Denver or from private donors shall be used exclusively for the operation, maintenance, and development of the Winter Park Recreational Area for the benefit of the general public."

After incorporation, Denver and the Association entered into an agreement by which Denver vested in the Association full control, discretion and power in "the selection, development, and arrangement of all facilities located in the area or which may hereafter be included in the area...." It was also specified that all income from concessions, from the operation of ski tows, or from any other source whatsoever was to be received directly by the Association and used exclusively for the development, operation, and maintenance of the ski area.

This agreement has been amended from time to time to clarify and enlarge the authority of the Association and to extend the term of the agreement. The 1979 amendment extends the term until April 30, 2078. Over the years, the U.S. Forest Service has issued updated use permits to Denver for the 6,400 acre portion of the ski area, and these permits recognize the Association as an agent for Denver in the operation of the ski area. Other documents also consistently refer to the Association as the agent for Denver. The initial agreement and each amendment and the supplemental agreements between Denver and the Association have been approved and adopted by an ordinance of the Denver City Council.

We agree with the district court's finding that the agreements, the amendments, and supplemental agreements between Denver and the Association have combined to confer very broad authority upon the Association, and have vested it with legal title to all improvements and buildings located within the ski area. These documents also clearly specify that upon the termination of this agreement the Association, shall "forthwith donate, give, grant, convey, assign, set over and deliver to the City, by good and sufficient instruments of transfer, all of the right, title and interest of the Association in and to all buildings, improvements ... subject to all liens, encumbrances, pledges, charges, leases, secured and unsecured indebtedness of the Association."

### III. *Assessment by Grand County*

For the tax year of 1984, the Grand County Assessor for the first time assessed the buildings and portions of three ski lifts on land owned by the Arlberg Club and under a ground lease to the Association since 1974. Improvements and ski facilities were constructed and are owned by the Association on this land which comprises only a small part of the ski area.

The critical issue is whether the Association is exempt from taxation. The judgment decreed that the Association is exempt, and in this appeal, the State Board and the taxing authorities of Grand County challenge this judgment.

From the evidence in the record, the district court found that the Association is in fact an agent for Denver in the operation and maintenance of the ski area, and that Denver is the beneficial owner of all the improvements and facilities.

Colo. Const. art. X, § 4, provides:

"The property, real and personal, of the State, counties, cities, towns and other municipal corporations, public libraries, shall be exempt from taxation."

This provision of the constitution is implemented by § 39-3-101, C.R.S. (1982 Repl.Vol. 16B) which reiterates that real and personal property of the State and its political subdivisions shall be exempt from taxation. These constitutional and statutory provisions create an absolute tax exemption for all real and personal property owned by Denver.

However, defendants argue that the evidence shows that the Association, not Denver, is the real owner of the improvements and facilities on the Arlberg Club property. This, they argue, is so because the Associa-

tion executed the ground lease on this property as owner of the ski area, that legal title to the improvements and facilities is vested in the Association, and that workmen's compensation insurance is carried in the name of the Association. They argue further that the Association is the owner because it borrows money regularly and has committed itself to long-term debts for ski area improvements without specific authority or approval of Denver, and because the evidence generally reveals numerous other incidents that demonstrate the Association's status as owner of the improvements and facilities on the Arlberg Club land.

Defendants assert that these factors reveal the complete authority and unlimited control which the Association has over all phases of the business of operating the ski area, and that this evidence supports the State Board's conclusion of law that the improvements and ski facilities on the leased Arlberg Club property are owned by the Association and are, therefore, taxable. Defendants also contend that the constitutional and statutory exemption from taxation of public property depends solely on ownership, and that all the evidence here shows that the full use, right of possession, and all other incidents of ownership are in the Association, which is not exempt. We, like the district court, are unpersuaded.

In its Consolidated Order of Judgment, the district court correctly held that:

"Ownership for purpose of taxation must be determined by a rational consideration of all indicia or incidents of ownership including not only the right to exercise immediate control over the property, but the right to possess and enjoy the ultimate benefit of profits and proceeds derived from the property in question.... The profit or benefit of the use belongs to the City and County of Denver. The Association merely acts as the managing agent for Denver, and as such is not the real owner of the use or of the property in question for tax purposes."

The initial agreement between Denver and the Association, the Association's Articles of Incorporation, and other pertinent documents all establish that Denver and the Association intended a principal-agent relationship. Like the district court, we perceive nothing in the record that would tend to show that this relationship was ever terminated or that Denver ever had any intention of surrendering any of its rights as principal to the Association.

■ The constitutional and statutory provisions exempting public property from taxation requires but one condition and that is ownership by the public entity. *Gunnison County v. Board of Assessment Appeals*, 693 P.2d 400 (Colo.App.1984); *Stewart v. City & County of Denver*, 70 Colo. 514, 202 P. 1085 (1921).

■ Here, it is not disputed that initially Denver was the owner of all improvements and ski facilities in the ski area. The historical background and the numerous exhibits introduced in this case demonstrate that Denver never conveyed to the Association any of its ownership in the ski area. The extensive authority and unlimited control which Denver placed in the Association as its managing agent to operate and maintain the ski area is not compatible with defendants' contention that this delegation of authority and control amounts to a conveyance of the ownership of the ski area to the Association.

The fact that the Association built improvements in its name, or that it borrowed funds to build facilities, or that personal property was in the name of the Association did not transfer ownership from Denver to the Association. Rather, these facts are consistent with the relationship of principal and agent which is defined in the agreements, amendments, and supplemental agreements between Denver and the Association.

The sole intent of Denver and the Association as demonstrated by the evidence was at all times to create and maintain a principal-agent relationship, with Denver retaining the beneficial or real ownership of the property and the Association exercising its delegated authority and holding legal title solely for the purpose of carrying out its contractual obligations to Denver as its

agent. The fundamental question for tax exemption purposes must be decided on the basis of real ownership, rather than "forms and labels." *Gunnison County v. Board of Assessment Appeals, supra; Southern Cafeteria, Inc. v. Property Tax Administrator*, 677 P.2d 362 (Colo.App.1983).

## IV.

A secondary issue posed by defendants is whether improvements and ski facilities on the Arlberg Club land leased to the Association may be taxed separately from the land.

■ Because of our holding that the improvements and ski facilities on the Arlberg Club land under lease to the Association are exempt from taxation as public property owned by Denver, this issue need not be considered at length. It will suffice to state that under Colorado's scheme of taxation, there is no statutory provision which authorizes assessment and taxation of the improvements involved here separately from the land. For this reason also, the 1984 assessment is invalid and unenforceable.

Judgment affirmed.

PIERCE and PLANK, JJ., concur.