**CITIBANK, N.A., a national banking association, Appellant,**

v.

**BOARD OF ASSESSMENT APPEALS of the STATE OF COLORADO, Board of County Commissioners of Adams County, Colorado, Assessor of Adams County, Colorado, Appellees.**

No. 90CA2095.

Colorado Court of Appeals,
Div. III.

Jan. 30, 1992.

Kirkland & Ellis, John A. DeSisto, Denver, for appellant.

Gale Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Larry A. Williams, First Asst. Atty. Gen., Denver, for appellee Bd. of Assessment Appeals of the State of Colo.

Robert J. Loew, County Atty., Rita M. Harrell, Asst. County Atty., Brighton, for appellees Bd. of County Com'rs of Adams County, Colo.

Opinion by Judge RULAND.

Citibank, N.A., appeals from the order of the Board of Assessment Appeals (BAA) denying its request for an abatement and refund in property taxes pursuant to § 39–10–114(1)(a), C.R.S. (1982 Repl.Vol. 16B). We affirm.

In 1974, Advance Mortgage Corp., predecessor in interest to Citibank, granted a loan that was secured by a deed of trust covering Eastwood Estates Mobile Home Park (Park). The Park consisted of a large residential tract and three smaller commercial lots. In 1977, however, there was a default on the loan. Advance foreclosed and subsequently acquired title to the Park.

In 1980, Advance conveyed the property to Eastwood Estates Realty, Inc. However, because of an inadvertent error in the legal description, the three commercial lots were not included in the deed.

Eastwood Realty subsequently agreed to sell the Park to C. Wm. Meinhold & Associates, Ltd. While this transaction was in progress, Transamerica Title Insurance Co. discovered the defect in title. Accordingly, to close the sale, Eastwood Realty agreed to indemnify Transamerica if it would insure title to the Park for the benefit of Meinhold. Shortly thereafter, Advance was dissolved, and a correction deed was never obtained.

Meinhold later conveyed the Park to Marathon Mortgage Corp. Marathon then conveyed the Park to the City and County of Denver. Eastwood Realty, Meinhold, and Marathon each paid taxes due on both the commercial and residential lots during their ownership of the Park.

After the sale was completed to Denver, the Adams County tax assessor removed the residential lots from the tax rolls because the residential lots were exempt. *See* Colo. Const. art. X, § 4; § 39-3-101(d), C.R.S. (1982 Repl.Vol. 16B). However, after further review of the property records, the assessor determined that Advance still retained title to the commercial lots. Consequently, taxes were assessed on those lots.

Advance's successor, Citibank, failed to pay the taxes. As a result, in 1984, Adams County sold tax certificates on the commercial lots. Taxes for 1984-87 were then paid by the tax certificate holders.

In 1989, Citibank redeemed the tax sale certificate for one lot. The holder of the tax certificate for another lot had not yet applied for a tax deed as of the date of the BAA hearing. Adams County redeemed the tax sale certificate for the third lot.

Following a denial of its petition for refund and abatement by Adams County, Citibank petitioned BAA for a refund of taxes paid on its lot and for abatement of taxes on the lot not redeemed by the County.

According to § 39-10-114, C.R.S. (1982 Repl.Vol. 10B), an abatement or refund is available if there is: (1) an erroneous valuation or assessment; (2) an irregularity in levying; or (3) a clerical error. *See Board of Assessment Appeals v. Benbrook*, 735 P.2d 860 (Colo.1987); *Bea Kay Real Estate Corp. v. Aragon*, 782 P.2d 837 (Colo.App. 1989).

Citibank argues that BAA's decision not to grant the petition for an abatement and refund was arbitrary, capricious, and contrary to legal precedent. Specifically, Citibank argues that since Advance intended to convey both the residential and the commercial portions of the Park to Denver's predecessors in title, and since beneficial ownership of the commercial lots rests with Denver, Denver was the owner of the commercial lots for tax purposes during 1984-87. Based on this premise, Citibank contends that the assessment was levied illegally. We find no merit in this contention.

Pursuant to § 39-5-102(1), C.R.S. (1982 Repl.Vol. 16B), "[o]wnership of real property shall be ascertained by the assessor from the records of the county clerk and recorder...." And, in addressing the meaning of "clerical error" as used in the refund and abatement statute, our supreme court has held that the term does *not* encompass an error made by the taxpayer and relied upon by the tax authority. *Coquina Oil Corp. v. Larimer County Board of Equalization*, 770 P.2d 1196 (Colo.1989); *see also Amoco Production Co. v. Board of Assessment Appeals*, 770 P.2d 1207 (Colo.1989); *cf. 24, Inc. v. Board of Equalization*, 800 P.2d 1366 (Colo.App. 1990) (clerical errors by treasurer or assessor).

While Citibank does not contend that a clerical error occurred here, we view the analysis in *Coquina Oil* as dispositive of Citibank's contention because the same policy considerations underlying that holding are applicable here. Among such factors is that to grant the taxpayer relief in this case would run counter to the policy of avoiding adverse impact upon the tax structure of the state by the error of a taxpayer. Also, favorable consideration of this type of claim would free the taxpayer of any obligation in the first instance to ensure that recorded documents accurately reflect ownership for purposes of taxation. *See* § 39-5-102(1), C.R.S. (1984 Repl.Vol. 14). Hence, we hold that the assessments at issue do not constitute an illegal levy.

Finally, contrary to Citibank's contention, we do not view the opinion of this court in *Gunnison County v. Board of Assessment Appeals*, 693 P.2d 400 (Colo. App.1984) as requiring BAA to grant the relief requested by Citibank.

In *Gunnison County*, the county entered into a building and property lease-purchase agreement with Boettcher & Co. to repair and renovate the county's courthouse and jail facilities. Under this agreement, Boettcher retained title to the courthouse and jail, and the county leased it back. The district court found that, in this particular circumstance, the county owned the courthouse and jail for tax purposes

and that, thus, the property was within the public property tax exemption of Colo. Const. art. X, § 4.

A panel of this court affirmed, ruling that the county had sufficient control of the property to render it tax exempt. Specifically, this court noted that the county occupied and controlled the property, controlled construction and improvements of the property, maintained and insured the property, and retained an option to purchase the property. *See also Denver v. Board of Assessment Appeals*, 782 P.2d 817 (Colo.App.1989).

Here, Denver has not occupied the commercial lots, nor has it constructed any improvements on this property. Rather, the record indicates that during 1984–87, Denver, at most, simply considered the property in its planning for the construction of its new airport. Finally, unlike *Coquina Oil*, there was no mistake by the taxpayer in *Gunnison County* that misled the assessor as to ownership of the property. Instead, it appears that there was no issue as to the status of the title.

The order is affirmed.

METZGER and CRISWELL, JJ., concur.