**FEY CONCERT COMPANY, a Colorado General Partnership, Plaintiff–Appellant,**

**v.**

**CITY AND COUNTY OF DENVER, a Municipal Corporation of the State of Colorado; City and County of Denver Department of Revenue, Sales, Use and Occupational Tax Section; Patricia Schwartzberg, in Her Capacity as Man-**

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. Art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1995 Cum.Supp.).

ager of Revenue; the City Council of the City and County of Denver and its Members, as Council Persons; and The Honorable Wellington Webb, in His Capacity as Mayor of the City and County of Denver, Defendants–Appellees.

No. 95CA1101.

Colorado Court of Appeals, Div. I.

Sept. 5, 1996.

Rehearing Denied Oct. 31, 1996.

Certiorari Granted July 28, 1997.

Law Offices of T. Michael Carrington, Lynn C. Greene, T. Michael Carrington, Denver, for Plaintiff–Appellant.

Daniel E. Muse, City Attorney, Maria Kayser, Assistant City Attorney, Denver, for Defendants–Appellees.

Opinion by Judge METZGER.

In this action for judicial review pursuant to C.R.C.P. 106(a)(4), plaintiff, Fey Concert Company (Fey), appeals the district court's judgment affirming the decision of a hearing officer for the Department of Revenue of the City and County of Denver that upheld a $43,684.41 admissions tax assessment against Fey. We reverse and remand with directions.

Fey produces and promotes concerts. The Denver Zoological Foundation (the Foundation) is an agent of the City and County of Denver and is responsible for operating the Denver Zoological Gardens (the Zoo).

In the summer of 1986, the Foundation initiated the "Zoofest Summer Concert Series," a series of concerts on Zoo property. The Foundation charged admission to these concerts and that admission included admission to the Zoo. In addition, the Foundation also permitted other organizations to use Zoo property for concerts and other events, and Zoo admission was also included for those attending.

After several years of administering both the concert series and the Zoo rental to outside entities, the Foundation determined that the administrative burdens were too high. Thus, it not only discontinued its policy of allowing outside organizations to lease Zoo space for concerts, but it also sought the assistance of Fey in administering its Zoofest concert series.

In February of 1993, the Foundation sent a preliminary letter of agreement to Fey for the "co-promotion" of the 1993 concerts. The parties agreed to share expenses, liability, and income from the concerts.

The letter further outlined the separate duties of each party. Fey was to "execute the responsibilities that [the Foundation's] marketing director] had done for the past six years, including booking talent, production and promotion." The letter. also provided that: "The dates for the shows, and talent approval, will remain the responsibility of the Zoo. The name will remain 'Zoofest', and the integrity and history of the event will remain intact."

In August 1993, Fey and the Foundation executed a formal written contract, retroactive to May 1993, for "producing and promoting Zoofest for the Summer of 1993 only." The precatory language stated that the Foundation was "desirous of having a professional concert promoter be in charge of [its] concert series for the Zoo's financial and promotional behalf under a co-promotional agreement...."

The Foundation reserved control over many aspects of Zoofest to itself. And, in key areas such as contracting with talent and determining the maximum number of persons to be allowed in the audience, the Foundation retained the right to make the final decision. Moreover, the Rules and Regulations of the Denver Zoo were incorporated by reference into the agreement and, along with the Rules and Regulations for the Denver Department of Parks and Recreation, were made binding on Fey for all activities conducted at the Zoo.

In a later clause, the agreement expressly stated that Fey was not an employee of the Foundation and that the joint venture was limited in purpose and scope to include only the Zoofest for the summer of 1993. Also, the Foundation reserved the unilateral right to terminate the agreement under certain specified conditions.

By ordinance, the City and County of Denver has placed a 10 percent Facilities Development Admissions Tax (admissions tax) on all ticket sales for certain sporting and entertainment events conducted at city facilities. *See* Denver Revised Municipal Code 53–341, et seq. A vendor, defined as "a person making a sale to a purchaser of the taxable privilege of admission," Denver Revised Municipal Code 53–345(7), is required to collect the tax and remit the appropriate amount to the City's Manager of Revenue. Denver Revised Municipal Code 53–348. However, all ticket sales "to or by the city or any depart-

ment thereof," are exempt from the admissions tax requirements. Denver Revised Municipal Code 53–347(3). Before the agreement with Fey, the Foundation had not been required by the City to collect the admissions tax for either the Zoofest concerts or other events held on Zoo property.

In July 1993, after all but two concerts of the summer series had been held, Fey was formally notified by the Department of Revenue that the admissions tax would be assessed for all Zoofest concerts in the 1993 series. Further, Fey was informed that it was responsible for the collection of the tax funds and was therefore required to remit the designated amount to the City's Manager of Revenue, regardless whether it had collected the tax from ticket purchasers.

Later, under protest, Fey paid the $43,684.41 in assessed taxes out of its own funds, since neither Fey nor the Foundation had collected this tax from ticket buyers. Fey then sought review of the assessment.

After conducting a hearing, a Department of Revenue hearing officer determined that the assessment had been appropriate and ordered Fey to pay the tax. Fey brought a C.R.C.P. 106(a)(4) action in the district court, and the district court affirmed the hearing officer's decision.

## I.

■ Fey first contends that the trial court erred in refusing to determine that the hearing officer's decision was based on a misapplication of the appropriate legal standard. We agree.

■ A reviewing court is required to set aside the final orders of an administrative agency if the agency applied an erroneous legal standard. *City of Colorado Springs v. Givan*, 897 P.2d 753 (Colo.1995); *see also Electric Power Research Institute, Inc. v. City & County of Denver*, 737 P.2d 822 (Colo.1987); *Stamm v. City & County of Denver*, 856 P.2d 54 (Colo.App.1993).

■ A joint venture is a partnership formed for a limited purpose. As such, it is subject to the general law of partnerships. *Colorado Performance Corp. v. Mariposa Associates*, 754 P.2d 401 (Colo.App.1987).

■ In a partnership, each partner is both a principal and an agent of the partnership. *Ball v. Carlson*, 641 P.2d 303 (Colo. App.1981); § 7–60–109(1), C.R.S. (1986 Repl. Vol. 3A). The determination of the scope of such an agency relationship depends on the intent of the parties at the time they entered into the agency agreement. A principal-agent relationship may be general or specific, involving a broad or a narrow delegation of authority from principal to agent. *See Stortroen v. Beneficial Finance Co.*, 736 P.2d 391 (Colo.1987).

■ Under § 7–60–118(1)(e), C.R.S. (1986 Repl.Vol. 3A), all partners have an equal right to manage partnership business. However, the scope of a partner's management rights may be specified in the parties' agreement. "The right of mutual control, initially existing, could, by agreement, be placed wholly in the hands of one of the joint adventurers, and could, by subsequent agreement or practice, be changed so as to shift the control over the management of the enterprise in any fashion in accordance with the agreement without changing the relationship of the parties." *United States Fidelity & Guaranty Co. v. Dawson Produce Co.*, 200 Okla. 540, 544, 197 P.2d 978, 982 (1948).

■ A partnership may serve as an agent of another. 1 S. Rowley, *Partnerships* § 9.0 (2d ed.1960). And, a partner is not precluded from engaging in transactions with a partnership in which he or she is a member, so long as such transactions are conducted in good faith and the partnership receives appropriate compensation. *See* 1 S. Rowley, *Partnerships* § 21.1 (2d ed.1960).

■ In reviewing the decision of a governmental body under C.R.C.P. 106(a)(4), the interpretation of unambiguous contractual language is a question of law to be resolved by the court. *Denver Center for the Performing Arts v. Briggs*, 696 P.2d 299 (Colo. 1985); *see also Electric Power Research Institute, Inc. v. City & County of Denver, supra*.

Here, the record shows that the written agreement established a "Joint Venture for a Specific Purpose," *i.e.*, producing and promoting the 1993 Zoofest concert series. While the term "co-promotion" is not defined in the agreement, the definition of the term "promoter" includes,

> 1a: one that forwards or advances: EN-COURAGER, ABETTOR ... b: a person who alone or with others sets on foot and takes the preliminary steps in a scheme or undertaking for ... the carrying out of a business project c: one who assumes the financial responsibilities of a sporting event ... including contracting with the principals, renting the site, collecting gate receipts.

*Webster's Third New International Dictionary* 1815 (1986). In this context, the plain meaning of the term "promoter" indicates the existence of an agency relationship in which the promoter—here, the joint venture—assumes a variety of responsibilities in connection with its contractual duty to the principals, here, Fey and the Foundation.

Similarly, the term "producer" in this context refers to "one who assumes responsibility for the public presentation of a theatrical entertainment ... as an artistic and usually also as a financial venture...." *Webster's Third New International Dictionary* 1810 (1986).

However, the agreement here imposed several important limitations on the scope of the joint venture and the duties of Fey as a partner and agent of that venture. First, the agreement provided that it was established for the limited purpose of the promotion and production of Zoofest for the summer of 1993, and was intended neither to affect other Zoo activities nor to bind the parties in future years.

Second, the agreement indicated that the Foundation was to retain all of the authority for the management of Zoo property, including the right to hold concerts and events on its own, without the assistance of Fey, on the condition that it did not employ the services of any other concert promoting organization. Likewise, the Foundation reserved the unilateral authority to terminate the agreement under certain circumstances.

Finally, the duties delegated to the joint venture by the Foundation were divided between Fey and the Foundation, with Fey's authority narrowly circumscribed by the requirement that it obtain approval from the Foundation. Moreover, the Foundation's rules and regulations were incorporated into the agreement and made binding on Fey for all activities relating to Zoofest's promotion and production.

By virtue of the general law of partnership, both parties had an equal right to control the joint venture. However, based on the provisions in the contract, it is apparent that the parties agreed that the Foundation alone would exercise the dominant role and retain ultimate authority over the venture. *See United States Fidelity & Guaranty Co. v. Dawson Produce Co., supra.*

More significantly, the agreement clearly shows that the authority possessed by the joint venture was delegated to it by the Foundation. Also, the uncontroverted testimony at the hearing indicates that the purpose of the entire venture was to "outshop" specific ministerial tasks that had previously been performed by a Foundation employee.

Thus, we conclude that the joint venture served as an agent of the Foundation for the limited purpose of producing and promoting Zoofest in 1993. *See Metropolitan Denver Sewage Disposal District No. 1 v. Farmers Reservoir & Irrigation Co.*, 179 Colo. 36, 499 P.2d 1190 (1972); *see generally* 1 S. Rowley, *Partnerships* §§ 9.0 & 21.1 (2d ed.1960); *cf. Stortroen v. Beneficial Finance Co., supra.*

Because the joint venture was created specifically to serve as an agent of the Foundation, it owed a particular duty to the Foundation. Thus, to the extent that it served as an agent of the joint venture, Fey was operating as a subagent of the Foundation, exercising a limited range of specifically delegated functions to further the Foundation's purpose in holding the concerts. *See Stortroen v. Beneficial Finance Co., supra.*

The hearing officer found, with record support, that Fey had acted as a vendor of Zoofest tickets when it engaged the services of Ticketmaster and operated the box office

at the concerts. *See* Denver Revised Municipal Code 53–345(7). However, as was the case with some of its other contractual duties, Fey performed its vendor functions as an agent of the joint venture and, therefore, as a subagent of the Foundation.

As the hearing officer properly concluded, the Foundation is a department of the City for purposes of Denver Revised Municipal Code 53–347(3) and, as such, is exempt from the requirements of the admissions tax. However, she further concluded that, because Fey was a principal of the joint venture, it could not avail itself of the immunities held by the Foundation. In our view, because the Foundation, *i.e.*, the principal of the joint venture, was exempt, so too were its agent (the joint venture) and its subagent (Fey).

In this regard, we find guidance in *City & County of Denver v. Board of Assessment Appeals*, 782 P.2d 817 (Colo.App.1989) in which a division of this court determined that a property tax had been erroneously assessed on improvements and facilities at the Winter Park ski area. The opinion held that, while a private non-profit corporation had built the improvements in its own name and had borrowed the funds needed to construct some of these improvements, the corporation had at all times acted solely as an agent for the City and County of Denver. The corporation had exercised its delegated authority only as needed to carry out its contractual obligations to the City. In concluding that the City remained as the actual owner of the subject property, the division noted that "The fundamental question for tax exemption purposes must be decided on the basis of real ownership, rather than 'forms and labels.'" *City & County of Denver v. Board of Assessment Appeals, supra*, at 821 (quoting *Gunnison County v. Board of Assessment Appeals*, 693 P.2d 400 (Colo.App.1984)).

So too, here, the evidence shows that the Foundation retained ownership of Zoofest and used Fey's services as a surrogate for those of its own employees. Because Fey was, a subagent of the Foundation in all matters relating to the sales of tickets and the collection of box office receipts, the exemption applied. *See City & County of Den-ver v. Board of Assessment Appeals, supra; see also Metropolitan Denver Sewage Disposal District No. 1 v. Farmers Reservoir & Irrigation Co., supra; Finney v. Estes*, 130 Colo. 115, 273 P.2d 638 (1954)(municipality may contract with private agent to perform particular functions); *but see Vargo v. Sauer*, 215 Mich.App. 389, 547 N.W.2d 40 (1996)(Ernst, J. dissenting).

Accordingly, we conclude that the hearing officer misconstrued the plain language of the parties' agreement and misapplied the relevant legal standards in reaching her decision. *See Electric Power Research Institute, Inc. v. City & County of Denver, supra; Denver Center for the Performing Arts v. Briggs, supra*. Thus, the judgment of the district court which affirmed the order of the hearing officer cannot stand.

## II.

In light of this disposition, Fey's other contentions of error are either moot or without merit, and we need not address them.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment reversing the ruling of the hearing officer.

CRISWELL and JONES, JJ., concur.